UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.                    Index No. 20 Civ. 4066

                                                     **COMPLAINT AND**
                          Plaintiff,                 **DEMAND FOR JURY TRIAL**

            v.

LIGHTHOUSE LIVING LLC;
LIGHTHOUSE LIVING MANAGEMENT LLC;
LIGHTHOUSE LIVING REALTY, LLC;
J&J MANAGEMENT SERVICES LLC;
PAPP ARCHITECTS, P.C.,

                          Defendants.
----------------------------------------------------------X

           Plaintiff Fair Housing Justice Center, Inc., by and through its attorneys, Cuti

Hecker Wang LLP, for its Complaint alleges as follows:

                                    **INTRODUCTION**

           1.       Lighthouse Living is a full-service real estate development company with

extensive roots in Westchester.  Although it boasts about its commitment to "creat[ing] a higher

standard of living in all of our communities," a recent investigation has revealed that Lighthouse

systematically violates fair housing laws by developing buildings and "offering" rental dwellings

to the public that are not accessible for individuals with disabilities, making them impossible to

live in.

           2.       Lighthouse Living's consistent failure to design and construct new residential

properties in compliance with federal and state accessibility requirements has deprived

individuals with disabilities of equal access to housing opportunities in Westchester County.

           3.       For fifteen years, the Fair Housing Justice Center has worked to promote equal

housing for all members of its covered communities, and to remedy the discrimination

encountered by persons with disabilities, by investigating and enforcing through litigation compliance with federal, state, and local fair housing laws.  Its diligent pursuit of claims like those asserted here have succeeded in protecting and expanding equal housing opportunities for all New Yorkers.

4.     Plaintiff seeks to stop the discriminatory practices that Lighthouse Living and its affiliates have engaged in throughout Westchester County for several years.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FHAA.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's related claims arising under New York State law.

6.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District and all three residential apartment buildings that are the subject of this action are located in this District.

## JURY DEMAND

7.     Plaintiff hereby demands a trial by jury.

## THE PROPERTIES

8.     There are three pieces of real property at issue in this action.

9.     The building located at One Dekalb Avenue in White Plains, New York ("One Dekalb") is a 6-story, 76-unit rental apartment building, which was built for first occupancy after March 13, 1991.

2

10.     The building located at 120 North Pearl Street in Port Chester, New York ("The Light House") is a 5-story, 50-unit rental apartment building, which was built for first occupancy after March 13, 1991.

11.     The building located at 550 Halstead Avenue in Harrison, New York ("The Wood Works") is a 5-story, 36-unit rental apartment building, which was built for first occupancy after March 13, 1991.

**PARTIES**

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendant's discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Lighthouse Living LLC ("Lighthouse Living") is a limited liability company formed under the laws of the State of New York, with its headquarters located at 5 Waller Avenue, Suite 301, White Plains, New York 10601.  Lighthouse Living owns and/or directed, supervised, and/or participated in the design, construction, and/or development of One Dekalb, The Wood Works, and The Light House (the "Properties").  Upon information and belief, Lighthouse Living has and/or had sufficient control and/or authority to direct, supervise, and/or correct the development and/or construction of the Properties and/or to undertake to remedy

inaccessible features at the Properties so that each Property would be accessible to people with disabilities.  Upon information and belief, Lighthouse Living is part of the Lighthouse Living Real Estate Development brand.

14.    Lighthouse Living Management LLC ("Lighthouse Living Management") is a limited liability company formed under the laws of the State of New York, with its headquarters located at c/o Lighthouse Living LLC, 5 Waller Avenue, Suite 301, White Plains, New York 10601.  Lighthouse Living Management owns and/or manages the Properties.  Upon information and belief, Lighthouse Living Management has and/or had sufficient control and/or authority to direct, supervise, and/or correct the development and/or construction of the Properties and/or to undertake to remedy inaccessible features at the Properties so that each Property would be accessible to people with disabilities.  Upon information and belief, Lighthouse Living Management is part of the Lighthouse Living Real Estate Development brand.

15.    Lighthouse Living Realty, LLC ("Lighthouse Living Realty") is a limited liability company formed under the laws of the State of New York, with its headquarters located at 5 Waller Avenue, Suite 301, White Plains, New York 10601.  Lighthouse Living Realty owns and/or manages the Properties.  Upon information and belief, Lighthouse Living Realty has and/or had sufficient control and/or authority to direct, supervise, and/or correct the development and/or construction of the Properties and/or to undertake to remedy inaccessible features at the Properties so that each Property would be accessible to people with disabilities.  Upon information and belief, Lighthouse Living Realty is part of the Lighthouse Living Real Estate Development Brad.

16.    Defendants Lighthouse Living, Lighthouse Living Management, and Lighthouse Living Realty are collectively referred to herein as the "Lighthouse Defendants."  The

Lighthouse Defendants all share the same business address.  Upon information and belief, the

Lighthouse Defendants are affiliated entities and are operated under common control and/or aim

to support and further a common interest of advancing the Lighthouse brand and profits.

17.     J&J Management Services LLC ("J&J Management") is a limited liability

company formed under the laws of the State of New York, with its headquarters located at 1961

Route 6, Carmel, New York, 10512.  J&J Management manages One Dekalb and The Wood

Works in partnership with one or more of the Lighthouse Defendants.  Upon information and

belief, J&J Management has and/or had sufficient control and/or authority to direct, supervise,

and/or correct the development and/or construction of One Dekalb and The Wood Works and/or

to undertake to remedy inaccessible features at One Dekalb and The Wood Works so that each

Property would be accessible to people with disabilities.

18.     Papp Architects, P.C. ("Papp") is a private corporation formed under the laws of

the State of the New York with its principal place of business located at 222 Mamaroneck

Avenue, White Plains, New York 10605.  Papp performed architectural services for the design

and construction of the dwelling units and common areas at all three Properties and as such

failed to provide designs in compliance with the accessibility requirements of the fair housing

laws and/or had sufficient involvement in the implementation of its designs that resulted in the

design and construction of inaccessible housing in violation of the fair housing laws.

19.     Each Defendant participated in the design and construction process for all of the

Properties and/or, upon information and belief, was able to exercise sufficient control and/or

authority to undertake to remedy at least one of the Properties or otherwise to make the

Properties accessible to people with disabilities and/or compliant with applicable accessibility

laws.  Consequently, each Defendant had an independent, non-delegable duty to comply with the requirements of the fair housing laws.

## FACTUAL ALLEGATIONS

### Statutory and Regulatory Framework

20.     In 1988, Congress enacted the Fair Housing Act Amendments ("FHAA").  The legislative history of the FHAA shows that Congress intended the amendments to reflect the "clear pronouncement of a national commitment to end the unnecessary exclusive of persons with handicaps[1] from the American mainstream."  H.R. Rep. No. 711.

21.     Congress went on to describe the discriminatory effect created by architectural barriers to entry and use and enjoyment of a dwelling: "A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'"  H.R. Rep. No. 711.

22.     Specifically, the FHAA mandates that any multi-family dwelling that consists of four or more dwelling units and is built for first occupancy after March 13, 1991 ("covered dwellings") must provide the following:

a.     At least one accessible building entrance on an accessible route;

b.     Accessible and usable public- and common-use areas, which include all parts of the building beyond the individual units;

---

[1] Although the FHAA uses the term "handicap" for "disability," both terms carry the same legal meaning.  *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998).  The term "disability" is generally more accepted, and this Complaint uses the two terms interchangeably.

     c.     Doors designed to allow passage into and within all premises in such dwellings that are sufficiently wide to allow passage by persons using wheelchairs;

     d.     An accessible route into and through each dwelling;

     e.     Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

     f.     Reinforcements in bathroom walls that allow for the later installation of grab bars; and

     g.     Usable kitchens and bathrooms such that a person using a wheelchair can maneuver about the space.

23.     To give meaning to the FHAA design and construction requirements, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989, which are codified in 24 C.F.R. § 100.205. HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporate the requirements of the American National Standard for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSE"), the *Fair Housing Act Design Manual* in August 1996, which was updated in August 1998, and the *Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act* in April 2013.

24.     With nearly identical language to its federal counterpart, the New York State Human Rights Law prohibits failing to design and construct covered multi-family dwellings in an accessible manner.  New York Executive Law, Art. 15 §§ 296(5), (18).

**Fair Housing Justice Center**

25.     Since 2005, the mission of the Fair Housing Justice Center has been to eliminate housing discrimination, promote open, accessible, and inclusive communities, and strengthen enforcement of fair housing laws in New York City and its surrounding counties.

26.     FHJC's efforts to promote open and inclusive communities include, without limitation: (a) providing information to the public and other non-profit organizations in the New York region about fair housing laws; (b) providing intake counseling to individuals and organizations with allegations of housing discrimination; (c) conducting testing and other investigations of allegations of housing discrimination; (d) making legal referrals to cooperating attorneys; (e) assisting with the preparation and filing of administrative housing discrimination complaints; and (f) providing post-referral litigation support services.  FHJC provides these and other services free of charge and without regard to income.

27.     When investigating the accessibility of housing accommodations, FHJC dispatches individuals as "testers" – persons who pose as relatives or friends of prospective renters or homebuyers with disabilities for the purpose of obtaining information about the dwellings, including by taking measurements of particular components of the common areas and individual residential units.

28.     Before participating in a testing investigation coordinated by FHJC, the testers receive training from FHJC regarding, among other things, taking certain measurements, preparing tester report forms, and using concealed digital audio recorders during the tests.

**Inaccessible Features of One Dekalb Violate Fair Housing Laws**

29.     One Dekalb is a 6-story, 76-unit rental building located in White Plains.  All of the apartments at One Dekalb are covered dwelling units, as defined by the fair housing laws.

8

Among other amenities, One Dekalb offers a gym, coffee station, parking garage, and a roof deck and outdoor area containing barbecues, misting stations, and a lawn.  The individual residential units and all the common areas have been owned, managed, designed, and/or constructed by the Lighthouse Defendants and Defendants J&J Management and Papp.

30.     On December 17, 2018, FHJC dispatched two testers, posing as brothers, to view studio and one-bedroom apartments at One Dekalb.  The testers presented themselves as looking for an apartment on behalf of a relative with disabilities who uses a wheelchair.

31.     The testers met with a leasing agent named Julian Diaz., a broker for Lighthouse Living Realty.

32.     The testers observed the following during their visit to One Dekalb:

a)      The main entrance door, which is operated in a push/pull manner, was extremely heavy.  The leasing agent informed the testers that there would never be a doorman to assist tenants with operation of the front doors;

b)      mailboxes located in the lobby were located inaccessibly high for a person using a wheelchair;

c)      the threshold to access the roof terrace was inaccessibly high;

d)      in at least two of the units they viewed, the walk-in closet doorway was too narrow;

e)      in at least one of the units they visited, the bathroom lacked clear floor space in which a wheelchair could be maneuvered;

f)      environmental controls in each of the five units the testers viewed were not in accessible locations.

33.     The leasing agent informed the testers that the thermostats were not able to be accessed remotely, but that tenants could opt to convert all switches in a dwelling unit into "smart switches" that could be accessed remotely, at a cost of $25 per month, per switch/thermostat.

34.     Upon information and belief, a full inspection of One Dekalb will reveal the existence of other barriers to access.

35.     As required by the FHAA, Plaintiff requires a full inspection of One Dekalb in order to document and seek remedies for areas of non-compliance not identified in this Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing laws during an inspection that are not contained herein.

**Inaccessible Features at The Light House Violate Fair Housing Laws**

36.     The Light House is a 5-story, 50-unit rental building in Port Chester.  It was developed around the same time as One Dekalb.  All of the apartments in The Light House are covered dwelling units, as defined by the fair housing laws.  Among other amenities, The Light House offers a gym, coffee station, parking garage, and backyard outdoor area with barbecues, a pergola, a lounge area, and a pool.  The individual apartments and common areas at The Light house have been owned, managed, designed, and/or constructed by the Lighthouse Defendants, and Defendant Papp.

37.     On September 7, 2018, FHJC dispatched two testers to visit apartments at The Light House.  The testers posed as a husband and wife, who were looking at one- and two-bedroom apartments on behalf of a relative with disabilities who uses a wheelchair.

38.     The testers met with a leasing agent named Sal Eppolito, a representative of Lighthouse Living Realty.

39.    The testers observed the following during their visit to The Light House:

    a)    The front entrance to the building was inaccessible;

    b)    the roof deck entrance contained a large gap that made it inaccessible; and

    c)    in at least two of the units they viewed, the kitchens lacked clear floor space in which a wheelchair could be maneuvered.

40.    Upon information and belief, a full inspection of The Light House will reveal the existence of other barriers to access.

41.    As required by the FHAA, Plaintiff requires a full inspection of The Light House in order to document and seek remedy for areas of non-compliance not identified in this Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing laws discovered during an inspection, which are not contained herein.

**Inaccessible Features at The Wood Works Violate Fair Housing Laws**

42.    During their visit to The Light House on September 7, 2018, the leasing agent suggested that the testers view additional available apartments at The Wood Works nearby.

43.    The Wood Works is a 5-story, 36-unit rental building in Harrison.  It was developed around the same time as The Light House and One Dekalb, by virtually the same team.  Among other amenities, The Wood Works offers a parking garage and rooftop lounge area, which includes barbecues and a bar area.  The individual apartments and common areas at The Wood Works have been owned, managed, designed, and/or constructed by the Lighthouse Defendants and Defendants J&J Management and Papp.

44.    The testers viewed available one- and two-bedroom apartments

45.    The testers observed the following during their visit to The Wood Works:

    d)    Mailboxes were located inaccessibly high for a person using a wheelchair;

e)      in both of the apartments they visited, the light switches were not in
        accessible locations;

f)      in both of the apartments they viewed, environmental controls were in
        inaccessible locations; and

g)      in both of the apartments the testers viewed, outlets were in inaccessible
        locations.

46.    Upon information and belief, a full inspection of The Wood Works will reveal the
existence of other barriers to access.

47.    As required by the FHAA, Plaintiff requires a full inspection of The Wood Works
in order to document and seek remedy for areas of non-compliance not identified in this
Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing
laws discovered during an inspection, which are not contained herein.

**FIRST CAUSE OF ACTION**

**(Federal Fair Housing Act – 42 U.S.C. § 3601 *et seq*.)**

48.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth
herein.

49.    Plaintiff is an aggrieved person as defined in 42 U.S.C. §§ 3602(d) and (i), has
been injured by Defendants' discriminatory conduct, and has suffered damages as a result.

50.    The apartment units at One Dekalb, The Light House, and The Wood Works are
"covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

51.    Defendants designed and/or constructed the covered multi-family dwellings and
common use areas at One Dekalb, The Light House, and The Wood Works in violation of 42
U.S.C. § 3604(f)(3)(C).

52.     As a result of Defendants' failure to design and construct the above-identified covered multi-family dwellings in compliance with the accessibility requirements of the Fair Housing Act, Defendants have denied and continue to deny housing to disabled individuals.

53.     As a direct and proximate result of Defendants' ongoing denial of available housing to individuals with disabilities, Plaintiff has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.  As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been constructed in Westchester County that reduce housing opportunities for persons with physical disabilities.

54.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

55.     Accordingly, pursuant to 42 U.S.C. §§ 3613(a) and (c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**(New York State Human Rights Law – N.Y. Exec. Law § 290 *et seq.*)**

56.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff is a person as defined by Executive Law § 292(1).

58.     One Dekalb, The Light House, and The Wood Works are "housing accommodations" as defined by Executive Law § 292(10).

59.     Defendants' conduct as set forth above constitutes an unlawful discriminatory practice that discriminates in the furnishing of housing accommodations in violation of the accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

60.     Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by New York Executive Law § 296(5), in violation of the New York Executive Law § 296(6).

61.     As a direct and proximate result of Defendants' ongoing denial of available housing to individuals with disabilities, Plaintiff has been injured and continues to suffer damages, including diversion of resources and frustration of mission.

62.     Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

63.     Defendants' failure to design and construct was intentional, willful, or made in reckless disregard for the rights of others.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a.     An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*. and the New York State Human Rights Law, New York Executive Law § 290 *et seq*.;

b.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

     (i)     Discriminating against persons with disabilities in the design and/or construction of all dwellings;

     (ii)    aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws;

c.      An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation to:

    (i)      make or pay for all necessary modifications to their policies, practices, and procedures of designing and constructing multi-family residential buildings to conform and comply with fair housing and civil rights laws;

    (ii)     train all management, agents, and employees on pertinent fair housing, civil, and human rights laws;

    (iii)    allow for monitoring of future design and construction processes;

    (iv)     allow for periodic monitoring of the subject properties to ensure compliance;

    (v)      retain records to allow for appropriate monitoring; and

    (vi)     develop a written fair housing policy to be distributed to all employees and agents.

d.      An order and judgment awarding monetary damages to Plaintiff FHJC to compensate it fully for the economic losses, diversion of resources, and interference with the fulfillment of its mission caused by Defendants' unlawful discriminatory practices;

e.      An order and judgment awarding punitive damages;

f.      An order and judgment awarding Plaintiff attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.      Pre- and post-judgment interest on any and all such awards; and

h.      Any further relief that may be just and proper.

Dated: New York, New York
        May 27, 2020

By:     /s/ Alice G. Reiter     
       John R. Cuti
       Alice G. Reiter

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
jcuti@chwllp.com
areiter@chwllp.com

*Attorneys for Plaintiff Fair Housing Justice Center, Inc.*