UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER INC., | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 09/20/2021 |

FAIR HOUSING JUSTICE CENTER INC.,

                  Plaintiff,

       v.

LIGHTHOUSE LIVING LLC; LIGHTHOUSE
LIVING MANGEMENT LLC; LIGHTHOUSE
LIVING REALTY, LLC; LIGHTHOUSE
ENTERPRISES LLC; ONE DEKALB LLC; AGD
NORTH PEARL LLC; 550 HALSTEAD AVENUE
LLC; J&J MANAGEMENT SERVICES LLC;
PAPP ARCHITECTS, P.C.,

                  Defendants.

20 CV 4066 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Fair Housing Justice Center, Inc. ("Plaintiff") brings this action against Lighthouse Living LLC; Lighthouse Living Management LLC; Lighthouse Living Realty, LLC ("Realty"); Lighthouse Enterprises LLC (together, the "Lighthouse Defendants"), One Dekalb LLC; AGD North Pearl LLC; 550 Halstead Avenue LLC; J&J Management Services LLC; and Papp Architects, P.C. ("Papp") alleging that they own and/or designed properties that are not wheelchair accessible in violation of the Federal Fair Housing Act, 42 U.S.C. § 3601 ("FHA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 ("NYSHRL").

Presently before the Court are Realty and Papp's motions to dismiss the Amended Complaint. (ECF Nos. 57 & 60.) For the following reasons, the motions are both DENIED.

## **BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint (ECF No. 36) and are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

Plaintiff is a non-profit organization that works to eliminate housing discrimination. (Am. Compl. ¶ 12.)   Part of its strategy is to investigate the accessibility of housing accommodations using "testers," or individuals who pose as relatives or friends of prospective renters or buyers with disabilities to obtain information.  (Am. Compl. ¶ 31.)  Plaintiff deployed testers to the three properties at issue in this matter: (1) 120 North Peral Street ("the Light House"); (2) 550 Halstead Avenue ("the Wood Works"); and One Delkalb Avenue ("One Dekalb" together, the "Properties").  (Am. Compl. ¶¶ 9-11; 33-53.)

- The Light House is a 5-story, 50-unit rental apartment building in Port Chester, New York that opened for occupancy in or around 2017.  (Am. Compl. ¶ 10.)  On September 7, 2018, Plaintiff sent two testers to the Light House to view apartments.  (Am. Compl. ¶ 42.)  During their visit, the testers observed several issues for wheelchair users, including an inaccessible front entrance, an inaccessible roof deck entrance, and a lack of floor space in the kitchen.  (Am. Compl. ¶ 44.)

- The Wood Works is a 5-story, 36-unit rental apartment building located in Harrison, New York that opened for occupancy in or around 2017.  (Am. Compl. ¶ 11.)  On September 7, 2018, Plaintiff sent two testers to the Wood Works to view apartments.  (Am. Compl. ¶¶ 47, 49.)  During their visit, the testers observed several issues for wheelchair users, including inaccessible mailboxes, light switches, environmental controls, and outlets. (Am. Compl. ¶ 50.)

- One Dekalb is a 6-story, 76-unit rental apartment building located in White Plains, New York that opened for occupancy in or around November 2018.  (Am. Compl. ¶ 9.)  On December 17, 2018, Plaintiff sent two testers to One Dekalb to view apartments.  (Am. Compl. ¶ 34.)  During their visit, the testers observed several issues for wheelchair users

including a heavy entrance door; inaccessible mailboxes, rooftop access, and environmental controls; narrow walk-in closet doorways; and a lack of floor space in the bathroom.  (Am. Compl. ¶ 36.)

The Lighthouse Defendants own and directed the design, construction, and development of the Properties.  (Am. Compl. ¶¶ 13-16.)  Papp performed architectural services for the design and construction of the dwelling units and common areas of the Properties.  (Am. Compl. ¶ 22.)

Plaintiff commenced this action on May 27, 2020 (ECF No. 1) and filed the Amended Complaint on August 4, 2020 (ECF No. 36).  The parties filed their motions to dismiss on February 3, 2021 (ECF Nos. 57 & 60).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.     Realty's Motion to Dismiss

Realty avers that the Amended Complaint fails to state a plausible claim for discrimination, as the allegations against Realty are all conclusory.   (Defendant Realty's Memorandum of Law in Support of its Motion to Dismiss ("Realty's Mem.") ECF No. 62 at 7.) Realty states it is a third-party broker that is not affiliated with the other Lighthouse Defendants, and therefore it had no control or authority over the development or design of the Properties. (*Id*. at 7-8.)  Realty also contends that it cannot provide the relief Plaintiff seeks as Realty has no control or authority to direct the construction or modification of the Properties. (*Id*. at 9.)  Realty attached to its motion the Declaration of Adam E. Collyer (the "Collyer Declaration") that attaches five exhibits, including New York Department of State Division of Corporations printouts for the Lighthouse Defendants (Exs. A & D to the Collyer Declaration), and correspondence between counsel attaching Realty's Operating Agreement, organizational chart, and the Declaration of David Mann (Exs. B, C, & E to the Collyer Declaration.)   In their memorandum of law, Realty cites these exhibits to show that Realty is a separate entity from the other Lighthouse Defendants, and that Plaintiff was aware of this before filing the Amended Complaint. (Realty's Mem. at 3, 8-9.)

In response, Plaintiff avers that it has plausibly alleged on information and belief that Realty participated in the design and construction of the Properties because (1) Realty shares the same name and office suite as the other Lighthouse Defendants, and (2) Realty employees told Plaintiff's testers that "we" could remediate inaccessible apartment features.  (Memorandum of

Law in Opposition to Defendant Lighthouse Living Realty, LLC's Motion to Dismiss the Amended Complaint ("Pl.'s Realty Opp." at 6-8.)  Plaintiff also argues the Court cannot consider the declarations and documents filed with Realty's motion, as they are not attached to or incorporated by reference into the Amended Complaint, and Plaintiff did not rely on them.  (Pl.'s Realty Opp. at 9-10.)  In reply, Realty reiterates that it sent the exhibits to Plaintiff before the Amended Complaint was filed, and that the Court may take judicial notice of information known to Plaintiff at the time it filed the Amended Complaint.   (Defendant Realty's Reply Memorandum of Law in Further Support of its Motion to Dismiss ("Realty.'s Rep.") ECF No. 64 at 4 n.3, 6.)

The Court will first address whether it can consider at this stage the materials attached to Realty's motion, then will determine whether the Amended Complaint fails to state a claim against Realty.[1]

### A.  Realty's Declaration and Exhibits

After a review of the Collyer Declaration and exhibits, the Court holds it may only consider Exhibits A and D in determining the instant motion.  In deciding a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment.  *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016).  This generally includes "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Communs, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007).  It is also well established that a court may not "consider factual

---

[1]        The standards for Realty's NYSHRL claim parallels those applicable under the FHA, and therefore the Court's resolution of Realty's FHA challenge will also resolve its state law claim.  *Lynn v. Vill. of Pomona*, 212 Fed. Appx. 38, 40 n.2 (2d Cir. 2007).

averments contained in affidavits" in determining a motion to dismiss.  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018).

Courts may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Tech., Inc*., 987 F.2d 142, 150 (2d Cir. 1993); *see also Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").  Where the complaint "relies heavily upon [a document's] terms and effect," that document is "integral" to the complaint. *DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  "A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his [or her] complaint." *Williams v. City of New York*, No. 14-CV-5123 NRB, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

A court may also take judicial notice of public documents or matters of public record. *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. Sept. 30, 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.").  The documents must still be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See* Fed. R. Evid. 201(b).  "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Purdie v. Brown*, No. 14 Civ. 8490(NSR), 2015 WL 6741875, at *3 (S.D.N.Y. Nov. 3, 2015) (quoting *Chapman v. Abbott Lab*s., 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013)).

6

Here, the Court declines to consider the facts asserted in the Mann and Collyer Declarations.  Further, it is clear that the exhibits appended to the Collyer Declaration were not incorporated by reference, nor were they integral to the Amended Complaint.  Realty would need to show more than just Plaintiff's receipt of the documents to make this showing.  *See Abdur-Raheem v. Caffery*, 13-CV-6315 (JPO), 2015 WL 667528, at *3 (S.D.N.Y. Feb. 17, 2015) ("In order for a document to be 'integral,' however, a plaintiff must actually have relied on its terms and effect in drafting the complaint; mere possession or notice is not enough.") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The Court may take judicial notice of public documents, including those from administrative agencies.  Specifically, the Court may "take[] judicial notice . . . of the public Entity Information provided by the New York State Department of State, Division of Corporations Corporate and Business Entity Database."  *Haru Holding Corp. v. Haru Hana Sushi, Inc.*, No. 13 CIV. 7705 (RWS), 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016) (using public documents to take judicial notice of defendant's business status); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 177 (E.D.N.Y. 2013) (holding that the Court would consider a printout of a page from the New York State Department of State Division of Corporations website when determining a motion to dismiss because "the exhibit is a record of an administrative agency").  Here, Exhibits A and D contain printout pages from the New York State Department of State Division of Corporations website for the Lighthouse Defendants.  The Court takes judicial notice of these documents.

However, the Court will not take judicial notice of Realty's Operating Agreement or organizational chart, as nothing within the exhibits indicates that they were filed in the public records.  *See Hullinger v. Anand*, CV 15-07185 SJO (PJWx), 2015 WL 11072169, at *7 (Dec.

7

22, 2015) ("Because the [complaint] does not allege the contents of a written operating agreement and because the purported operating agreement's authenticity is in dispute, the Court declines to take judicial notice of the Operating Agreement."); *McGehean v. AF&L Ins. Co.,* 2009 WL 3172763, at *2 (E.D. Pa. Oct. 2, 2009) (declining to take judicial notice of several exhibits, including an organizational chart, where they were not matters of public record and the sources were questionable).   While Realty claims that all of the exhibits were "publicly available," (Realty Mem. at 3 n.3), it provides no information about where Exhibits B, C, and E can be found in the public domain.  *See* Fed. R. Evid. 201(c)(2) ("The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information.").

In sum, the Court has considered only Exhibits A and D for the purposes of this motion.

### B.  *Upon Information and Belief*

Realty contends that the Amended Complaint fails to state a claim as the allegations are purely conclusory, and Realty is a third-party not owned or affiliated with the other Lighthouse Defendants.  (Realty's Mem. at 7-8.)   Realty points to Exhibits A and D to the Collyer Declaration to show that while all the Lighthouse Defendants have the same registered address, the other Lighthouse Defendants have a different registered agent than Realty.  (Realty's Mem. at 3, 7-8.)  In response, Plaintiff argues that it plausibly alleged on information and belief that Realty participated in the design and construction of the Properties with the other Lighthouse Defendants.  (Pl.'s Realty Opp. at 6.)  Realty further argues these allegations are supported by facts in the Amended Complaint, including (1) Realty has the same office space as the other Lighthouse Defendants; (2) Realty has the same name  "Lighthouse Living"  as the other Lighthouse Defendants; (3) the design and construction of the Properties, which all of the Lighthouse Defendants contributed to, are similar which indicates this is their regular practice;

and (4) Plaintiff's testers met with a leasing agent from Realty on their visit to One Dekalb who stated "we" could make certain accommodations in the apartments.  (Pl.'s Realty Opp. at 7-8.)

A plaintiff may plead facts upon information and belief "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010).  However, this is not a license to make wholly conclusory assertions.  *See Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory . . . .").  Indeed, "'[c]onclusory pleadings on information and belief are inadequate as a matter of law' to survive a motion to dismiss."  *Egan v. Tradingscreen, Inc.*, No. 10 CIV. 8202 LBS, 2011 WL 1672066, at *9 (S.D.N.Y. May 4, 2011) (quoting *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004), *aff'd in part, vacated in part on other grounds sub nom.  Lesavoy v. Gattullo-Wilson*, 170 Fed. Appx. 721 (2d Cir. 2006)).

Here, the Amended Complaint alleges that "[u]pon information and belief, Lighthouse Living Realty has and/or had sufficient control and/or authority to direct, supervise, participate in and/or correct the design and construction of the Properties and/or to undertake to remedy inaccessible features at the Properties so that each Property would be accessible to people with disabilities."  (Am. Compl. ¶ 15.)  The Amended Complaint further alleges that "[u]pon information and belief, Lighthouse Living Realty is one of the related entities comprising the Lighthouse Living real estate development brand" and "the Lighthouse Defendants are related entities and/or are operated under common control and/or aim to support and further a common interest of advancing the Lighthouse Living brand and profits."  (*Id*. ¶¶ 15, 20.)  Lastly, the Amended Complaint alleges, "upon information and belief" that "[e]ach Defendant . . . was able

9

to exercise sufficient control and/or authority to undertake to remedy at least one of the Properties or otherwise to make the Properties accessible to people with disabilities and/or compliant with applicable accessibility laws." (*Id*. ¶ 23.) The Court finds that this is sufficient at this stage.

The allegations made by Plaintiff upon information and belief all involve information that would be in the possession and control of the Lighthouse Defendants. Indeed, any specific actions taken by the individual Lighthouse Defendants in designing, creating, or managing in any way the relevant Properties would not be known outside of the participating companies.

Further, liability under the FHA for discriminatory design and construction is imposed broadly. *See Ohana v. 180 Prospect Place Realty Corp*., 996 F. Supp. 238, 240 (E.D.N.Y. 1998) ("In order to achieve its purpose, the provisions of the FHA are to be construed broadly."). Additionally, "[t]here are no express statutory limitations on possible defendants." *United States v. Tanski*, 1:04-CV-714, 2007 WL 1017020, at *22 (N.D.N.Y. Mar. 30, 2007); *see also Baltimore Neighborhoods Inc. v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661, 665 (D. Md. 1998) ("When a group of entities enters into the design and construction of a covered dwelling, all participants in *the process as a whole* are bound to follow the [FHA] . . . [i]n essence, any entity who contributes to a violation of the [FHA] would be liable."). At this stage, Plaintiff must sufficiently plead facts showing that Realty participated in the design and construction of the Properties. As this is information possessed by Defendants, Realty may rely upon information and belief that this is true.

Realty alleges Plaintiff merely relies on conclusory allegations to support its claim. However, Plaintiff points to several alleged facts that do provide an inference of plausibility that Realty was involved in the creation of the Properties. Not only does Realty share the same name

and office as the other Lighthouse Defendants, but it also participated in leasing units in at least one of the relevant properties, One Dekalb.  Most importantly, a representative from Realty informed Plaintiff's testers that "we" could install accommodations in One Dekalb.[2]  The Court agrees with Plaintiff that these facts, taken together, create a plausible inference that Realty was involved in the design and construction of the Properties.

Realty points to Exhibits A and D to show that Realty is not owned, managed, or operated by the same individuals as the other Lighthouse Defendants.  (Realty's Mem. at 7-8.)  However, while these Division of Corporations Entity Information printouts show that Realty's registered agent is different, that does not mean that Realty is completely separate from the other Lighthouse Defendants, nor does it mean it did not participate in the development of the relevant Properties.

Accordingly, Realty's Motion to Dismiss is DENIED.

## II.    Papp's Motion to Dismiss

Defendant Papp moves to dismiss Plaintiff's FHA and NYSHRL claims as time-barred.[3]  The Court addresses these claims separately below.

### A.   The FHA

The FHA's statute of limitations provision states:

An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the

---

[2]      Realty argues that Plaintiff's reference to this occurrence is a "red herring" because the accommodation discussed (grab bars in the bathroom) is not a requirement of the FHA's design and construction provisions. (Realty's Mem. at 8.)  However, the allegation that a Realty representative offered to create such an accommodation, regardless of its status under the FHA, provides support for the plausible inference that Realty has control over the premises and  did assist in designing or constructing the Properties.

[3]      Papp also filed the affirmation of Jonathan P. Pirog with their motion that attaches several exhibits, including a sworn affidavit from Philip A. Fruchter ("Fruchter Affidavit") attaching additional exhibits that include Papp's contracts, invoices, and other official documents.  As discussed *supra*, non-public materials will not be considered at the motion to dismiss stage.

termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A).  The parties agree that the Second Circuit has not yet addressed the question of when this limitations period begins to run.  Papp cites to outside jurisdictions, including the Ninth Circuit, to argue that "an FHA claim arising out of the design or construction of a building accrues   and the limitation period commences   when the architect completes its last service on the project or when the final certificate of occupancy is issued."  (Memorandum of Law in Support of Defendant Papp Architects, P.C.'s Motion to Dismiss the Amended Complaint ("Papp's Mem.") ECF No. 57 at 7.)  Papp argues to interpret this clause in any other way would "extend the statute of limitations indefinitely" and render it "meaningless."  (*Id.*) Papp also argues that the continuing violation doctrine does not apply to claims against design professionals.  (*Id.* at 8.)

In response, Plaintiff argues that (1) the text and legislative history of the FHA show that in design and construction cases, the statute of limitations does not begin to run until the unlawfully inaccessible features have been remedied; (2) in the alternative, the statute of limitations does not begin to run until a claimant is injured by a discriminatory housing practice; (3) the continuing violation doctrine applies due to Papp's pattern and practice of discrimination; and (4) the discovery rule applies.  (Memorandum of Law in Opposition to Defendant Papp Architects, P.C.'s Motion to Dismiss the Amended Complaint ("Pl.'s Papp Opp.") ECF No. 58 at 4-5.)  After a review of the arguments made by both parties, the Court holds that the continuing violation rule applies, and therefore Plaintiff's claim is timely.

The plain text of the FHA's statute of limitations clause has been analyzed and interpreted by various federal courts, with two theories emerging as to when the statute is tolled.

Both theories are discussed in the Ninth Circuit case, *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (*en banc*).  First, the majority reviewed the statutory text and held "an aggrieved person must bring the lawsuit within two years of either 'the occurrence . . . of an alleged discriminatory housing practice' or 'the termination of an alleged discriminatory housing practice.'"  *Id*. at 461 (citing 42 U.S.C. § 3613(a)(1)(A)).  As the discriminatory practice was the "failure to design and construct a multifamily dwelling according to FHA standards," the statute of limitations was found to be "triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued."  *Id*. (internal quotations omitted).  The Court held that the "termination" of "a failure to design and construct" is "the conclusion of the design-and-construction phase."  *Id*.  The majority also determined that the use of "aggrieved person" in the statute only "comes into play in determining whether she [or he] has standing to bring suit."  *Id*. at 464.

In contrast, the dissenting opinion in *Garcia* asserts that "the most plausible reading of the statute is that the limitations period begins (at the earliest) when a disabled person actually experiences discrimination -- either in attempting to buy or rent a noncompliant housing unit, in 'testing' such a unit or upon moving in as a tenant."  *Id*. at 467 (Fisher, J., dissenting).  The dissent explains that the use of "aggrieved person" and "discriminatory housing practice" provide the more natural reading that the "statute of limitations is triggered when someone is aggrieved by one of the unlawful actions specified by § 3604(f)(1) or § 3604(f)(2), with the two-year period running from the occurrence or termination of the offending practice."  *Id*. at 468  69 (Fisher, J., dissenting).  "[U]ntil a plaintiff has become 'aggrieved,' he cannot 'commence a civil action'; and until he can legally initiate his action, there is no reason even to consider the further requirement that FHA suits be filed 'not later than 2 years after the occurrence or the termination

of an alleged discriminatory housing practice.'" *Id.* at 472 (Fischer, J., dissenting) (citing §
3613(a)(1)(A)).   In response to the majority's argument that "aggrieved" pertains only to
standing, the dissent points out other statutes with similar language that have not been
interpreted in this way. *Id.* at 473 (Fischer, J., dissenting).  Lastly, the dissent finds support for
its view in the relevant legislative history, the Supreme Court's precedent regarding FHA's
construction, and the U.S. Department of Housing and Urban Development's interpretation of
the FHA.  *Id.* at 475  77 (Fischer, J., dissenting).

While the Second Circuit has not addressed this issue, this District has.  In *Fair Housing
Justice Center., Inc. v. JDS Development LLC et al.*, 443 F. Supp. 3d 494, 500 (S.D.N.Y. 2020),
the Honorable Judge Torres was presented with and evaluated the same issue before this Court
now.   After analyzing the FHA's text, common-law tort principles, the FHA's purpose, and
agency interpretation, Judge Torres agreed with the *Garcia* dissent, and held that "the FHA
limitations period on design-or-construction claims set out in 42 U.S.C. § 3613(a)(1)(A) begins
to run when a person protected by the FHA encounters the allegedly unlawful building elements,
and thus is subjected to discrimination." *Id.* at 503.

Papp does not address *Fair Housing Justice Center.*  Instead, Papp contends that cases
involving architects, as opposed to owners, developers, and managers, are distinguishable.
(Reply Memorandum of Law in Support of Defendant Papp Architects, P.C.'s Motion to Dismiss
the Amended Complaint ("Papp's Reply") ECF No. 59 at 3-4.)  To support this argument, Papp
relies on four cases, however only two of these cases clearly distinguish how the statute is
applied to architects as opposed to other parties.[4]  In *Kuchmas v. Towson University*, 553 F.

---

[4]       Instead, the other two cases take a different view of the plain text of the FHA.  First, in *Garcia*, 526 F.3d at
459, the plaintiff sued the original builder and architect and the current owners and management after he rented an
apartment that did not comply with the FHA.  As discussed above, the Ninth Circuit held that because the
discriminatory practice "is the failure to design and construct a multifamily dwelling according to FHA standards . . .
[t]he statute of limitations is [] triggered at the conclusion of the design-and-construction phase, which occurs on the

14

Supp. 2d 556, 562 (D. Md. 2008), the United States District Court for the District of Maryland discussed a prior memorandum opinion it issued that held "the statute of limitations began running on the design and construction FHA claim against PGAL Architects as soon as the building's construction was completed and first occupied in 2000." The *Kuchmas* Court held that unlike the architects, the other defendants continued to be involved in leasing the noncompliant apartments, and therefore continued to benefit from the inaccessible units, while the architects ceased all involvement years ago. *Id.* at 562 63. Similarly, in *Sentell v. RPM Management Company*, 653 F. Supp. 2d 917, 921 22 (E.D. Ark. 2009), the United States District Court for the Eastern District of Arkansas relied on *Kuchmas* to hold that a claim was untimely as the defendant worked "as the designing architect" and "the discrete act of alleged misconduct occurred when [the architect] designed the apartment complex," and thus the statute of limitations began when he completed his last act as the architect for the building.

However, at least one court has distinguished these two cases and applied the continuing violation doctrine to a case involving an architect.[5] *National Fair Housing Alliance, Inc. v. HHHunt Corporation,* 919 F. Supp. 2d 712, 713 (W.D. Va. 2013), involved a claim brought by two nonprofits against developers, managers, and the design architect for apartment complexes

---

date the last certificate of occupancy is issued." *Id.* at 461. The majority in *Garcia* does not distinguish between architects and other kinds of defendants. Similarly, *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 493–94 (E.D. Va. 2002), involved an FHA action against "builders, architects and condominium associations" after the plaintiff encountered illegal barriers at their various housing complexes. The United States District Court for the Eastern District of Virginia held the claim was time-barred as to all defendants, as the continuing violation doctrine was inapplicable because the defendants did not perform any acts within the two years preceding the complaint. *Id.* at 507. Again, the Court did not make a distinction between the builders and architects for statute of limitations purposes.

5       The Supreme Court has recognized that a continuing violation theory may apply to claims of FHA violations. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). The continuing violation doctrine applies "when a plaintiff challenges not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291–92 (S.D.N.Y. 2011) (internal quotations omitted). Where applied, "the doctrine delays 'the commencement of the statute of limitations period . . . until the last discriminatory act in furtherance of' the alleged discriminatory policy." *Id.* at 292 (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)).

that allegedly violated the FHA.  Specifically, plaintiffs sued the architect for his work on two properties that had FHA violations.  *Id*. at 714.  The parties agreed that the plaintiffs' claim for one of the properties was timely, and that the statute of limitations for the other property began to run when the last certificate of occupancy was issued, and therefore the claim could only survive if the continuing violation doctrine applied.  *Id*.  To support their claim, the plaintiffs argued it applied as the architect designed multiple properties that had violations, constituting "flagrant, systematic and continuing violations of the FHA."  *Id*.

The defendant architect argued that the Court should either hold that the continuing violation theory was inapplicable in the FHA design and construction context, or in the alternative, hold the continuing violation theory does not apply against an architect.  *Id*. at 716. To distinguish *Garcia*, the plaintiffs argued that their claim is not based "on the continuing effects of past acts of discrimination," and involve multiple properties.  *Id*.  The Western District of Virginia agreed, as "most post-*Garcia* cases . . . have interpreted *Garcia* narrowly . . . as rejecting only the type of continuing violation theory where the plaintiff seeks to use it to impose liability for *effects* of allegedly discriminatory design and construction defects."  *Id*. at 716 17. The plaintiffs had alleged that defendant engaged in a "pattern and practice of discrimination" that included acts of discrimination within the statute of limitations period.  *Id*. at 717.  After a review of the caselaw, the Court found that the continuing violation doctrine can be applied in design and construction cases with multiple properties.  *Id*. at 717 18.

In a footnote, the Court addressed the defendant's second argument, which the Court held was not persuasive.  First, the Court discussed how in the cases where courts determined the continuing violation doctrine was inapplicable to architects, *Kuchmas* and *Moseke*, this decision was based on the courts' finding that "no discriminatory act occurred within the two-year

limitations period as to any complex." *Id.* 718 n.4.  Second, the Court held the text of the clause does not provide any reason to distinguish claims against designers or architects.  *Id.* Additionally, requiring the continuing violation theory to apply only where acts occur within the limitations period "establishes a safeguard against unlimited liability." *Id.*

Here, the allegations against Papp are similar to those against the architect in *National Fair Housing Alliance.*  The Amended Complaint alleges "Papp performed architectural services for the design and construction of the dwelling units and common areas at all three Properties" and the "similarities in properties developed within approximately three years of one another indicate that the Lighthouse Defendants, their related entities, and the design and other firms they engaged, including Papp . . . have a regular practice of designing and constructing multi-family residential dwellings . . . that do not comply with the accessibility requirements of the [FHA] . . . ."  (Am. Compl. ¶¶ 22, 54.)  Papp concedes that the Amended Complaint states a timely cause of action against it for One Dekalb.  (Papp's Mem. at 14.)[6]  The similarities between the Properties include the size of the buildings, the entities that helped develop or manage them, the location in Westchester County, and the allegation that they were all opened for occupancy within three years of each other.  (Am. Compl. ¶¶ 9-11, 23, 54.)  They also share similar defects, with at least two of the Properties having inaccessible mailboxes, roof terraces, and environmental controls, and a lack of floor space.  (Am. Compl. ¶¶ 36, 44, 50.)  Further, Plaintiff alleges it has identified additional multi-family residential apartment buildings that Papp and other defendants are in the process of designing and constructing, including "a seven-story, 242-unit building to be located in Port Chester and over 150 apartments units across three buildings in White Plains and Mamaroneck."  (Am. Compl. ¶ 55.)  Taken together, these

---

[6]        To rebut this allegation, Papp cites to invoices attached to the Fruchter Affidavit.  (Papp's Mem. at 14.)  However, as discussed *supra*, invoices are not public documents, and therefore it would be inappropriate for the Court to consider them at this stage.

allegations present a pattern of discriminatory conduct that includes acts within the two-year statute of limitations.[7]

Papp argues that it has not engaged in a continuous policy or practice, as (1) "[t]here are no allegations that Papp engaged in any policy or practice regarding non-compliant design and/or construction of dwellings" and (2) Plaintiff's allegations about Papp's current projects are "pure speculation and conjecture." (Papp's Mem. at 15; Papp's Reply at 9-10.) However, as made clear in *National Fair Housing Alliance,* Plaintiff need not show more than two similar properties to develop a pattern. 919 F. Supp. 2d at 720 21. The Court finds that at the motion to dismiss stage, Plaintiff has pled adequate facts to support a pattern of discriminatory housing practices. Therefore, the Court holds that the continuing violation theory applies, and Plaintiff's claim is timely.

### B.   NYSHRL

The statute of limitations for a NYSHRL claim is "three years from the date that the claim accrues." *Allen v. New York City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 511 (S.D.N.Y. 2014) (citing N.Y. C.P.L.R. § 214(2)). Like the FHA, the statute of limitations for this statute is tolled by the continuing violation doctrine. *Stone v. 23rd Chelsea Assocs.*, 18-CV-3869 (VSB), 2020 WL 1503671, at *7 (S.D.N.Y. Mar. 30, 2020) (dismissing a NYSHRL claim where the plaintiff failed to allege any unlawful conduct during the limitations period and therefore the continuing violations doctrine did not apply). As discussed above, the continuing violations doctrine applies in this case, and therefore Plaintiff's state law claim is also timely.

Accordingly, Papp's Motion to Dismiss is DENIED.

---

[7]

While the relevant properties in *National Fair Housing Alliance* shared a list of similarities and was still a "close call," the court was evaluating a motion for summary judgment. 919 F. Supp. 2d at 719–20. Here, at the motion to dismiss stage, it would be extremely difficult for a potential plaintiff to bring a claim based on a pattern of discrimination if we required a full and detailed list of numerous similarities between the buildings in the complaint. Indeed, this information would likely not be acquired until after discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, the motions to dismiss the Amended Complaint are DENIED
without prejudice.  Realty and Papp are directed to file answers to the Amended Complaint by
October 12, 2021.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 57 & 60.

Dated:  September 20, 2021                                    SO ORDERED:
       White Plains, New York

                                             NELSON S. ROMÁN
                                   United States District Judge